## L. E. EDMONSON v. J. P. BLESSING AND OTHERS.

1. Where husband and wife contemplating a separation agree upon a division of their property, and for that purpose convey the same, including expressly their homestead, to a third party, the husband paying the wife in money the amount agreed upon as her share; and after the husband's death the children of the parties and the wife bring suit against a purchaser of the said homestead property, at administration sale of the estate of the husband. *Held*, it is the right of the defendant to have the court instruct the jury upon the legal effect of the deed of the said husband and wife as affecting the question of homestead, and it was error in the court to refuse to charge, at request of defendant, " that if the jury believe from the evidence that S. and wife made " an outright deed of the property in controversy to C., who after the " death of S. conveyed it to his administrator, such conveyance vitiated " all homestead rights as to innocent parties and strangers, and an in- " nocent purchaser of the property, in such case, without knowledge " of the facts, under decree of the Probate Court, in which the estate " was administered, would acquire a good title."

2. HOMESTEAD—ABANDONMENT OF RIGHT. Husband and wife have full control of the homestead, and upon conveying it voluntarily with the formalities prescribed by law, with the intent of divesting it of its homestead character, no reason is perceived why such conveyance was not effectual to accomplish their purpose.

3. ABANDONMENT OF HOMESTEAD RIGHTS. A deed executed by husband and wife for the express purpose of an abandonment of homestead rights, would have that effect in law, and be conclusive against heirs of the grantors claiming, against a purchaser at administrator's sale, the right of the husband for whose use the original deed was made, and to whose administrator the grantee had conveyed the homestead, unless the property had again become homestead.

4. The question of fact  whether the husband had subsequently to the deed
   made the property his homestead, was a question of fact for the jury,
   who should have been instructed as to the legal effect of the deed to
   the trustee, and that it was an abandonment by the parties of home-
   stead rights.

APPEAL from Galveston  Tried below before the Hon. A.
P. McCormick.

*Ballinger, Jack & Mott* with *Willie & Cleaveland,* for ap-
pellant, cited Kerr on Fraud and Mistake, 195, 226, 233;
2 Kent's Com., 577; 2 Pow. on Con., 795; Herman's Law of
Estoppel, 409; Welch *v.* Rice, 31 Texas, 688; Cox *v.* Shrop-
shire, 25 Texas, 122; Shepherd *v.* Cassiday, 20 Texas, 24;
Jordan *v.* Godman, 19 Texas, 273; Edmiston, Admr., *v.* Long,
17 Texas, 135; Trawick *v.* Harris, 8 Texas, 312; Iken &
Co. *v.* Oleneck, *supra.*

*Burroughs & Allen,* for appellees, cited Hill on Trustees,
172; 2 Washburn, 438–446, 465; Millican *v.* Millican, 24 Texas,
426; Leakey *v.* Gunter, 25 Texas, 400; Calhoun *v.* Wright, 23
Texas, 522; Massey *v.* Massey, 20 Texas, 134; Vandever *v.*
Freeman, 20 Texas, 333; Mead *v.* Randolph, 8 Texas, 191;
Bailey *v.* Harris, 19 Texas, 108; Zantzingers *v.* Gunten, 19
Wall., 32; Shepherd *v.* White, 11 Texas, 346; Soye *v.* Mc-
Callister, 18 Texas, 80; Soye *v.* Maverick, 18 Texas, 100;
Blythe *v.* Easterling, 20 Texas, 565; Kerr on Fraud and Mis-
take, 237 and 338.

GOULD, J.  The appellees, children of C. H. Sterne, deceased,
joined by their mother, Emeline D. Taylor, brought this suit
to recover of the appellant, Edmonson, part of out-lot No. 62,
in the city of Galveston, claiming that at the death of their
father, in March, 1853, it was his homestead.  In the original
petition Mrs. Taylor, formerly Mrs. Sterne, claimed in her own
right, as lawful wife of C. H. Sterne at the time of his death,
but, by amendment before final trial, she abandoned any other
claim for herself  than as heir of one of the children deceased

after the death of L. H. Sterne.   Appellant, Edmonson, claimed title under a sale by the administrators of Sterne's estate, made by order of the Probate Court, in April, 1856.

On the 10th day of July, 1852, Sterne and wife, intending a separation, conveyed the property in controversy, then being their homestead, to Lewis L. Chiles, the deed reciting the payment of the purchase-money being duly acknowledged, and, on April 26, 1854, duly recorded.   The consideration of this conveyance, which embraced other lands, was six thousand dollars, which the evidence shows was in part paid to Mrs. Sterne by her husband at the time of the conveyance, and the balance collected for her out of his estate.   The deed recites amongst other matters as follows: " said Emeline D. Sterne being desi- " rous to sell and relinquish all the right, title, and interest " which she has in any manner in the place now constituting " the homestead of said Emeline D. and C. H. Sterne, and said " C. H. Sterne being willing that said Emeline D. should sell " and relinquish, and convey her interest in all the property and " in others hereinbefore mentioned, and also being willing to " sell and convey his interest in the homestead aforesaid." Also, " said Emeline D., hereby intending to sell and convey " all of her interest in said community as fully and effectually " and to the same extent as though the bonds of matrimony " between her and her said husband had been dissolved by the " death of said C. H. Sterne, and her share of interest in said " community had been duly and legally set apart to her after " such death," and conveys " all the right, title, and interest of " said Emeline D. and C. H. Sterne in any manner in and to " the aforesaid homestead property."

A separation at once ensued between Mr. and Mrs. Sterne, each taking two of their four children.   It is alleged by defendant and denied by plaintiffs that Sterne subsequently obtained a divorce.   The evidence is that a suit for divorce was brought, but there is no evidence as to its result.   Mrs. Sterne went to California and remained till after his death.   He remained on the place till the following fall, when he put his children to

board at school and rented the place, reserving, however, a small office in the yard, which he used as a bed-room up to his death. Sterne's administrator inventoried the property as his homestead, but in July, 1854, by order of the Probate Court, gave up to Chiles his notes to the amount of thirteen thousand five hundred dollars, which were conditioned that he might discharge them by re-conveying the property in the deed from Sterne's wife to him, and received from him a conveyance of all of said property, the conveyance reciting that it was made for the benefit of the estate. The proceedings in the Probate Court which led to this order are not set out, and, for aught that appears on the face of the conveyance, it was merely the cancellation of a debt by Chiles in pursuance of a right reserved by him. The evidence, however, satisfactorily shows that Chiles acted in the matter as the mutual friend of Sterne and wife, and had paid nothing originally, and claimed no interest individually.

The position of appellees is that Chiles only held the lot in trust for Sterne; that Sterne's homestead right in the place continued, notwithstanding the deed, up to his death; that the legal effect of the deed by Chiles was to vest the legal estate in Sterne's heirs, who already had the equitable title; and that defendant had constructive notice of their rights.

Appellant alleged that the place was not the homestead of Sterne at his death, setting up the deed to Chiles, and claiming that the homestead was abandoned; also that he had bought and paid for the property without notice of any homestead claim thereon.

The material part of the charge of the court is as follows: "And if the jury believe, from the proof, that the premises in "question were so conveyed to Chiles to hold the same in trust "for Sterne, and that Sterne occupied or controlled the premi- "ses as his homestead up to the time of his death, you will find "for the plaintiff the land described in the pleadings as sought "to be recovered in this suit."

The defendant requested the following instruction, which

was refused: "If the jury believe, from the evidence, that "Sterne and wife made an outright deed of the property in "controversy to L. L. Chiles, who, after the death of Sterne, "re-conveyed it to his administrator, such conveyance vitiated "all homestead rights as to innocent parties and strangers, and "an innocent purchaser of the property, in such case, without "knowledge or notice of the facts, under decree of the Probate "Court, in which the estate was administered, would acquire "good title, and in such case the jury will find for defend- "ant."

There was a verdict and judgment for plaintiffs, from which defendant appealed.

It was the right of the defendant to have the jury instructed as to the legal effect of the deed to Chiles. We think the evident intention of that deed was to divest both Sterne and wife of all homestead rights in the premises, and that such was its legal effect at the time of its execution. The parties jointly had full control of the homestead, and having voluntarily conveyed it, with the formalities prescribed by law, with the design of divesting it of its homestead character, no reason is perceived why the conveyance was not at the time effectual to accomplish their purpose. In Cox v. Shropshire (25 Texas, 123), the court, speaking of a deed made by Cox and wife without consideration, conveying their homestead to his brother, and containing no such recitals as does the deed in question, showing that the homestead character of the property was considered, says : "But the deed is evidence, certainly of a very "decisive character, that the grantors had relinquished their "title, and no longer had any claim to the property as a home- "stead." Sterne and wife were doubtless aware that so long as they were husband and wife, one of them could not have a homestead in which the other had no rights. To accomplish their purpose the conveyance must amount to an abandonment of their homestead, and we think that such was its legal effect.

The court should have instructed the jury as to the effect of

this conveyance, in order that they might intelligently pass upon the question of fact, whether the place was occupied by Sterne as a homestead at his death. Though he had by his conveyance abandoned it, the evidence shows that he retained equitable ownership of the premises, and it certainly was within his power to re-adopt it as a homestead whenever he saw fit. Whether the circumstances of his occupation, subsequent to the conveyance, show an intention on his part to occupy the place as homestead, was a question for the jury. The fact that he remained in the place for a day, a month, or two-thirds of a year after the conveyance, could not necessarily as a matter of law, amount to occupation as a homestead. Such occupation may have been with intentions consistent with the purposes of the deed, or it may have been that because Sterne believed he could not do so without investing Mrs. Sterne with homestead rights, or because he had no longer any such wish as prompted the conveyance, or for other reasons, he intended to occupy, asserting his rights of ownership and homestead. The charge as given can hardly be said to be erroneous, but it is believed to be defective, and that the charge asked by defendant embodied a proposition, as to the effect of the conveyance to Chiles, which should have been given.

For this reason, without passing on other questions raised, the judgment is reversed, and the cause remanded.

Reversed and remanded.