### JOHN P. BLESSING v. E. EDMONSON.

1. APPROVED.—Edmonson *v.* Blessing, 42 Tex., 596, approved.
2. EVIDENCE—RECITALS.—The recitals in an inventory made by an administrator are not evidence, in a subsequent controversy, to show the homestead character of the property.
3. HOMESTEAD—CHARGE OF COURT.—In a suit involving the existence of homestead rights, the court was asked to instruct the jury, in effect, that if the wife abandoned the husband voluntarily, left the State, and remained in another State with intention not to return, the husband might readopt a homestead without investing the wife with homestead rights; which was refused: *Held*, That there was no error, the evidence showing that the separation was a matter of mutual agreement.
4. A JUDGMENT for defendant in trespass to try title, which in terms attempts to remove cloud from defendant's title, will not, when the pleadings of defendant are purely defensive, operate to prevent the plaintiff from maintaining his second suit.

APPEAL from Galveston. Tried below before the Hon. A. P. McCormick.

This suit was brought by Emeline D. Taylor (formerly Emeline D. Sterne, formerly wife of Christopher H. Sterne, deceased) and her children to recover a lot of ground in the city of Galveston. The character of the suit as originally brought, is set forth in the opinion of Judge Gould, in 42 Texas, pages 597–599.

This case came to this court at the Galveston Term of 1875, on appeal by Edmonson, and was reversed for errors of law in the court below. It was retried in the District

Court, with verdict and judgment for Edmonson, being the second verdict of a jury in his favor on the facts and merits— one verdict having been rendered in favor of the present appellants, under instructions as to the law, which was reversed. Their motion for a new trial was refused, and they prosecuted this appeal.

In order that the instructions given may be clearly apprehended, the entire charge to the jury, as set forth in the record, is here inserted, as follows:

"Plaintiffs seek to recover the lots or parcels of land described in the pleadings.

"The parties admit that the land did belong to the estate of C. H. Sterne, and that the plaintiffs are the surviving heirs and constituents of the family of the said Sterne.

"The defendant claims title from said estate, through a purchase from the administrators, and his defense is made out, unless it has been shown that the land was at the time of the death of Sterne his (Sterne's) homestead.

"There is no question as to the fact that this land was the homestead of C. H. Sterne and wife, E. D. Sterne, prior to and up to the 10th of July, 1852.

"On that day, said Sterne and wife conveyed the property in question to L. L. Chiles. This deed relinquished and abandoned the claim of both E. D. Sterne and C. H. Sterne to any homestead right or privilege either of them then had in the premises, and unless the said C. H. Sterne, subsequently to the execution of said deed on the 10th day of July, 1852, reacquired a homestead right in said land, no such right existed at the date of his death, and the plaintiffs cannot recover.

"The plaintiffs claim and plead that the conveyance to Chiles was a transfer of the legal estate, to be held by Chiles in trust for C. H. Sterne, and that subsequently to the execution of said conveyance, said C. H. Sterne destinated said lots as his homestead, and so continued to treat, control, use, and consider them to the time of his death.

" The conveyance to Chiles purports to pass the full title, and it is conclusively construed to effect a complete abandonment of the homestead right or privilege of said C. H. Sterne then attaching to said lots; but whether said deed did convey full and unqualified title to the said lands, or only passed the legal title thereto, subject to the right of C. H. Sterne to the beneficial ownership thereof, is an inquiry that you are permitted and required to make and answer from the proof.

" If it was the intention of the makers of said deed of July 10, 1852, that said Chiles was thereafter to be the owner in fact of said lots, and any valuable consideration actually passed to C. H. Sterne, or to E. D. Sterne, from said Chiles, in such case, if the proof shows it to exist, said Chiles could take full title, both legal and equitable, by said deed, and C. H. Sterne could not acquire homestead right therein until he reacquired title thereto. If, on the contrary, no valuable consideration passed, or was intended to pass, from said Chiles to the makers, or either of them, of said deed, and it was the intention of the parties, for mutual convenience, or for any lawful purpose, to place the legal title in said Chiles, to hold the same in secret trust for said C. H. Sterne, in such case, if the proof shows it to exist, said C. H. Sterne's right of property continued, notwithstanding the execution and delivery of said conveyance to Chiles; and if such were the case, said C. H. Sterne could at any time after said conveyance readopt or redestinate said property as his homestead.

" Whether said property was held by Chiles in full right for himself as a purchaser, or was held in trust for C. H. Sterne, you will determine from the proof; and if you find it was held by said Chiles as full owner, and for his own use, you will find for the defendant.

" If you find, from the proof, that said land was held by Chiles in trust for C. H. Sterne, you will inquire further, and ascertain from the proof, whether, after the conveyance to Chiles, said C. H. Sterne adopted or destinated the property as his homestead, and continued so to treat, consider, and

control it to the time of his death. The essential elements of a homestead are the legal or beneficial ownership of certain premises, suitable for use as a human habitation, and the purpose in the mind of said owner to make use of said premises then and thereafter as his home, accompanied by such use of said premises as evidences said purpose, or as is consistent with it, if the purpose be otherwise declared and shown. How a homestead shall be used, depends upon the condition of the owner and of his family. He cannot have two homesteads. Nor is he required to have, or conclusively presumed to have, one, from the mere fact of his owning property suitable for a home. It is a question of fact, for the jury to ascertain, from all the acts of the party, whether in truth he has a place that he looks upon and treats as his home place or homestead. The mere occupancy for a time of certain premises does not, of itself, constitute that place the homestead; nor does the temporary disuse of certain premises as a home, or the letting them to the use of others, destroy the claim of homestead, if it exist.

"If you find, from the proof, that said Chiles held said lands for said Sterne, but that said Sterne never destinated or selected the same as his homestead, or to be his home place, after the execution of the same as such up to the time of his death, you will find for the defendant.

"If you find that said land was so held in trust for C. H. Sterne, and that C. H. Sterne, after the conveyance to Chiles, selected or destinated the same to be his homestead, and so retained, used, treated, and controlled it to the time of his death, you will find for the plaintiffs.

"The burden of proof is on the plaintiffs, on both the issues submitted to you in this charge; and in reference to the re-adoption or destination of the premises as a homestead, you are charged, that the mere fact that C. H. Sterne remained on the place for a day, for a month, or for the length of time he continued alive after the conveyance, would not of itself, as matter of law, amount to occupation as a homestead, but

can only be regarded by you as one element of the proof from which you are to determine whether the intention to use it as a homestead did exist at the time; and the proof of claim of homestead there, and occupation and use as such homestead, must be such as satisfies the minds of the jury that the premises were so claimed and used by C. H. Sterne, after the execution of the deed to Chiles, and at the time of his death; and if the proof does not so satisfy your minds, you will find for the defendant."

The defendant asked among others the following instructions, which were refused, viz.: "If the jury believe, from the evidence, that Sterne and wife made an outright deed of the property in controversy to L. L. Chiles, who, after the death of Sterne, conveyed it to his administrators, such conveyance vitiated all homestead right as to innocent parties or strangers; and an innocent purchaser of the property, in such case, without knowledge or notice of the facts, under decree of the Probate Court, in which the estate was administered, would acquire good title, and in such case the jury will find for the defendant."

*I. M. Burroughs*, for appellants.

*George P. Finlay & Bro.*, also for appellants, cited Shepherd v. Cassiday, 20 Tex., 29; Taylor v. Boulware, 17 Tex., 77; Earle v. Earle, 9 Tex., 634; Trawick v. Harris, 8 Tex., 316; Sossaman v. Powell, 21 Tex., 665; 20 Tex., 565; 18 Tex., 100; 18 Tex., 80; 20 Tex., 109; 13 Tex., 323; 15 Tex., 527; 45 Tex., 617.

*Ballinger, Jack & Mott*, for appellee.

GOULD, ASSOCIATE JUSTICE.—When this case was formerly before this court, (42 Tex., 596,) it was held, that it appeared, from the recitals in the deed from Sterne and wife to Chiles, that their intention was to divest the property of its home-

stead character, and that the legal effect of that instrument was an abandonment of the homestead. It was further held, that it was a question of fact whether, after this abandonment, the premises again became the homestead of Sterne; and that the fact that Sterne remained on the place after the conveyance did not, as matter of law, undo what had just been done, and make the abandoned place again his homestead; but that it was for the jury to say whether his occupancy was of such a character, and with such intentions, that, at the time of his death, the place was once more his homestead. On the last trial, the court, in its charge, embodied substantially the views of the law expressed in that opinion. We have seen no reason to change those views, but still regard them as consistent with the object and spirit of the homestead exemption, and not inconsistent with the former decisions on the subject. The late period in the term at which this case was submitted, does not admit of any extended discussion of the subject or the authorities which bear upon it; and, for the present, we must content ourselves with stating that we adhere to and are satisfied with the conclusions arrived at on the former appeal, as expressed in the opinion.

The evidence on the last trial did not differ materially from that on the first, except that it was conceded that Sterne procured a divorce in the District Court of Harris county in December, 1852. The evidence as to the character of Sterne's occupancy is to some extent conflicting, and, in our opinion, the court did not err in refusing to disturb the verdict. The contrary view of the evidence fails to give to the abandonment by the conveyance to Chiles its due force, and fails to distinguish between the effect of a partial occupancy under such circumstances, and occupation in an ordinary case, where there had been no abandonment.

No material error was committed in the exclusion of evidence. The divorce was admitted on both sides, and the fact that in the decree of divorce the premises were allotted

to Sterne was not material, on the only real issue on the last trial, viz.: Was the place Sterne's homestead when he died? The recitals of the inventories made by the administrators were not evidence on that issue, whatever might have been their importance had the defendant on the last trial relied on the defense of purchase without notice of homestead. That ground of defense was not submitted to the jury by the charge, and may be regarded as having been abandoned.

It is complained, that the court erred in refusing to instruct the jury, that if Mrs. Sterne voluntarily abandoned her husband, left the State, and went to and remained in California, with intent not to return, Sterne might have readopted the homestead without investing Mrs. Sterne with any homestead interest therein. We think, that, from the entire evidence, it is apparent that the separation was by mutual agreement, and that the testimony of Mrs. Sterne, that she voluntarily abandoned her husband, meant no more than that she agreed to the separation, and in pursuance of that agreement went away. Such being our construction of the evidence, we think the charge asked was correctly refused.

As to other charges refused, so far as was material, they were substantially embraced in the charge given.

It is claimed, that the judgment removing the cloud from appellee's title was not responsive to the pleadings, and may have the effect to debar plaintiffs from another suit. It is believed that a similar form of judgment has become quite common in cases of trespass to try title, and that in such cases, where the pleadings of the defendant were purely defensive, the form, though inappropriate, will not operate to prevent a second suit, and the use of such form is not such error as need be corrected. The judgment is affirmed.

AFFIRMED.